STATE OF IOWA, Appellee, v. T. E. ALBERY, Appellant.

**JURY: Challenges—Relationship to Witness.** Relationship of a juror
1  by consanguinity to a prospective witness in a criminal· cause is not ground for challenge.

**JURY: Challenges—Waiver.** Principle reaffirmed that a party wishing
2  to take advantage, after verdict, of the disqualification of a juror, should show affirmatively that neither he nor his counsel had knowledge of such disqualification before the juror was sworn as a juror.

**NEW TRIAL: Separation of' Jurors.** The retirement of the jurors to
3  *separate* rooms during the night furnishes, in and of itself, no ground for a new trial.

**RECEIVING STOLEN GOODS: Evidence—Corpus Delicti.** On the
4  trial of an indictment for receiving stolen goods, any proper evidence tending to show that the goods were in fact stolen goods is

admissible, even though the accused had nothing to do with the original larceny. Especially is this true of evidence *also* tending to show the defendant's guilt of feloniously receiving the stolen property.

**EVIDENCE: Opinion Evidence—Hypercritical Objection.** An objection charging that the question "whether the handwriting on different exhibits was written by the same party" calls for the identity of the *party*, and not for the *similarity* of the handwriting, is purely hypercritical, and will be disregarded.

**CRIMINAL LAW: Evidence—Other Offenses—Course of Dealing.** On a·trial on an indictment for feloniously receiving a stolen automobile, testimony of a notary public is admissible as to the taking of acknowledgments to registration certificates and transfers at the instance of the accused, when neither the accused nor the party purporting to make the transfer was present before the notary.

**WITNESSES: Cross-Examination—Immaterial Questions.** Reversible error does not necessarily result from asking an accused, on cross-examination, immaterial questions, or questions beyond the range of his direct examination. Prejudicial error must in some manner appear.

**CRIMINAL LAW: Instructions—Withdrawing Charges Not Relied On.** An accused may not predicate error on the action of the court in instructing as to the different ways in which an offense may be committed, and then specifically withdrawing all said ways except the one on which the State had elected to rely.

**CRIMINAL LAW: Instructions—Unnecessary Repetition.** The fact that the accused is on trial for one particular offense need not be repeated in the instructions.

**CRIMINAL LAW: Instructions—Contradictory Instructions.** Instructions reviewed, and held noncontradictory.

*Appeal from Hardin District Court.*—G. D. THOMPSON, Judge.

MARCH 11, 1924.

THE defendant was indicted for buying, receiving, and aiding in concealing stolen property of a value in excess of $20. He entered a plea of not guilty, and upon trial was convicted.— *Affirmed.*

*Lundy, Peisen & Soper,* for appellant.

*Ben J. Gibson,* Attorney-general, *Neill Garrett,* Assistant Attorney-general, and *Albert Steinberg,* County Attorney, for appellee.

FAVILLE, J.—At the time of the transaction involved in the indictment in this case, appellant conducted a business in Eldora known as the "rent a Ford and drive it yourself" business, and a secondhand automobile business. He had a storage room that accommodated eight or ten cars, and handled about one hundred secondhand cars during the year 1920, and about half that number prior to September, 1921.

On August 26, 1921, one Wallukait, who is a resident of Dakota City, Iowa, attended the fair at Fort Dodge. He drove a Ford touring car to the fair, and parked the same inside the fair grounds, at about two o'clock in the afternoon. At five o'clock he discovered that the car had been stolen. Some days later, the car was identified by Wallukait. It was then in the private garage of one Norman, at New Providence, about nine miles southwest of Eldora. Norman had purchased the car from appellant.

It appeared that the engine numbers on the car were originally 4956147, and that they had been changed to 4973450.

It also appears from the evidence that, on or about the first day of August, 1921, one Ivey made application at the office of the county treasurer of Kossuth County, at Algona, for registration of an automobile. He gave his name as George E. Larson, described the car as a Ford car, and gave the number thereof as 4973450. This certificate showed on the reverse side a transfer purporting to be executed by the said George E. Larson, and showing the sale of said car to appellant. This transfer certificate was acknowledged before one Harris, a notary public at Eldora, on the 1st day of September, 1921. The registration certificate obtained at Algona was dated some twenty days before the car in question was stolen.

There is also evidence in the record that, in August, 1921, appellant purchased, at a hardware store in Eldora, a set of steel figure dies, about a quarter of an inch high.

It appears that the car in question was brought by Ivey to Eldora, and sold and delivered to appellant, who in turn dis-

posed of the same to Norman. The evidence also discloses that appellant had received a number of other cars from Ivey at different times during 1921. It also appears that Ivey had obtained a certificate of registration of another Ford car, at Spencer, in Clay County, under the assumed name of R. L. Davis, and that the engine number of one of the cars which appellant obtained from Ivey and sold to another party had been changed, and made to correspond with the number in the registration certificate which Ivey obtained at Spencer, under the name of Davis.

It also appears that it was the custom of appellant to secure the certificate of acknowledgment to signatures on automobile registration cards and transfers to be made by a notary public without having the parties present at the time.

The foregoing is a sufficient statement of the facts for the purposes of this appeal.

I. The name of one L. W. Harris was indorsed on the indictment as a witness before the grand jury, and he was used as a witness upon the trial.

1. JURY: challenges: relationship to witness.

One Eula Long was a juror in said case. Upon the *voir dire*, her answers disclosed that her maiden name was Harris. She was asked as to whether or not she had any relatives in Eldora, and answered that she did not. After the verdict, in support of a motion for a new trial, appellant offered evidence to the effect that the juror was the daughter of the half brother of the witness Harris.

No record of the examination of the juror was made on the *voir dire*. The evidence in regard to her examination was established by the oral testimony of the clerk of the court as to his recollection of the answers of the juror upon the *voir dire*. No challenge was made to the juror at the time of her examination, and she was accepted by appellant and served as such juror. The fact of the relationship to the witness Harris, disclosed upon examination after the trial, would not have been a ground for challenge for cause if the same had been disclosed upon the examination of the juror. Such relationship to a prospective witness is not within the provisions of Paragraph 4, Section 5360, of the Code. Furthermore, there is no showing in behalf of appellant that he and his counsel did not have knowledge of

the relationship between the juror and the witness before the jury was sworn. Such affirmative showing was essential. *State v. Bussamus,* 108 Iowa 11; *State v. Baker,* 157 Iowa 126.

2. JURY: chal-
lenges: waiver.

The court did not err in refusing to grant appellant a new trial, upon the showing made in regard to this juror.

II. It appears from the record that the jury retired for deliberation at about 5:30 o'clock in the afternoon, and remained together in the jury room until about the hour of 12:30 the following morning, at which time three lady jurors went to another room across the hall, the distance between the doors of the two rooms being about ten feet. The three women jurors were locked in said room by the bailiff. The remaining jurors, who were men, were locked in the jury room. The bailiff took his station outside the doors of both rooms, in the hall, and near to each door, and he remained awake and on guard, and knew that no person entered or left either of the rooms, and that no one talked to or communicated with the members of the jury in either of the rooms. In the morning the jurors were brought together in the jury room, and continued their deliberations until a verdict was returned and the jury was discharged.

3. NEW TRIAL:
separation of
jurors.

There is no claim that there was any communication whatever with either group of jurors by any person. The appellant claims that the jury were not kept together, as provided by Code Section 5387.

This statute, like all statutes, must receive a reasonable construction. It cannot always be literally and strictly obeyed. We have discussed the question herein involved in the case of *McNider v. Fisher,* 197 Iowa 523, involving a similar statute, Code Section 3711.

As bearing on the question, see *State v. Bowman,* 45 Iowa 418; *State v. Wart,* 51 Iowa 587; *State v. Fertig,* 70 Iowa 272; *State v. Griffin,* 71 Iowa 372; *State v. Wright,* 98 Iowa 702; *State v. Foster,* 136 Iowa 527; *State v. Towne,* 180 Iowa 339; *State v. Bogardus,* 188 Iowa 1293; *McNider v. Fisher,* 197 Iowa 523.

There was no reversible error here.

III. Appellant complains of the introduction in evidence

of the forged applications for the registration of cars that were made by the man Ivey.

**4. RECEIVING STOLEN GOODS: evidence: corpus delicti.** There is no claim that appellant was present at these transactions. It was incumbent upon the State to establish in the first instance that the cars were stolen property, and it was also legitimate, if not essential, that the State identify Ivey, who disposed of the cars to appellant, as being the party who stole the cars. This could be established by circumstantial evidence, and it was proper for the State to prove the facts surrounding the larceny of the cars.

It was also proper for the State to show the course of procedure by Ivey, who it claimed stole the cars and caused the numbers to be changed thereon, and it was proper to show his method of obtaining the false registration certificates, even before the cars were stolen, and in changing, or procuring a change of, the engine numbers of the cars to conform to the certificates. Even though appellant was not present at the obtaining of the false registration certificates, the evidence was properly admissible as one link in the chain of evidence establishing the fact that the cars were stolen property. The evidence was proper to be considered in connection with other evidence offered in the case, as tending to show knowledge on the part of appellant that the cars in question were stolen property. As bearing on the question, see *State v. Scott*, 136 Iowa 152.

IV. The witness Harris was shown to be a bank cashier, and testified in regard to the similarity of handwriting on certain exhibits. The witness was asked whether or not, in his opinion, the handwriting on the two exhibits was written by the same party.

**5. EVIDENCE: opinion evidence: hypercritical objection.** It is urged that the question calls for the identity of the party who made the two signatures, and not for the similarity of the handwriting, which, it is urged, would be the only competent inquiry.

We think the objection is hypercritical and without merit. The question was proper, and the objection thereto was properly overruled.

V. Complaint is made of the evidence of the witness McFarland, who was a witness for the State, and who testified

with regard to taking the acknowledgments of certain parties

**6. CRIMINAL LAW: evidence: other offenses: course of dealing.**
to registration certificates and transfers at the instance of appellant when neither appellant nor the party purporting to make the transfers was present before him at the time the acknowledgments were so made.

The court did not err in receiving this evidence, under the circumstances. It had a legitimate bearing on the question of the manner of the operations of appellant in connection with the question of his receiving stolen property. It is true that some of this evidence refers to a car or cars other than the car in question in this case. This evidence was competent for the purpose of showing a course of dealing between appellant and the man Ivey, as bearing upon appellant's guilt in receiving property, knowing the same to have been stolen.

VI. It is strenuously urged by appellant that the court permitted a too wide latitude in the cross-examination of appellant, who was a witness in his own behalf.

**7. WITNESSES: cross-examination: immaterial questions.**
Code Section 5485 provides:

"When the defendant testifies in his own behalf, he shall be subject to cross-examination as an ordinary witness, but the State shall be strictly confined therein to the matters testified to in the examination in chief."

We recently considered this section of the statute in the case of *State v. Burris*, 194 Iowa 628, 637. See, also, *State v. Scott*, 194 Iowa 777. We are not disposed to depart from the salutary rule announced in said cases in respect to the cross-examination of a defendant who is offered as a witness in his own behalf. But prejudicial error does not appear in this case. The witness was asked, "Do you remember the Ford touring car Doctor Roberts was driving at the time he was arrested?" Over objection, the witness answered, "I do not remember the exact Ford, no." The objection might well have been sustained, on the ground that the question was immaterial; but we fail to see how there was any prejudice to appellant by reason of the admission of the evidence. No attempt was made to in any way connect appellant with the car or with the party referred to in this interrogatory.

Error is also predicated on the action of the court in over-

ruling objections to interrogatories propounded to appellant on cross-examination in respect to the amount of money he had on a certain date, which appears to have been after his arrest. The witness had already testified that he carried money with him with which he bought secondhand cars, and explained his reason therefor. Appellant was not prejudiced by the admission of this testimony, in view of the record.

Appellant was also cross-examined in regard to his manner of taking cards to the notary public to have him acknowledge the signatures of parties thereto when the parties were not present. The witness answered: "I remember the parties that Mr. McFarland acknowledged, if he did, were signatures that he knew." The question was not cross-examination, and appellant's objection thereto should have been sustained. However, we do not think that appellant suffered any prejudice by reason of this cross-examination. The witness McFarland had already testified in regard to the manner of taking such acknowledgments. There was no dispute of this evidence. The answers of appellant on cross-examination were more favorable to appellant than the testimony of the witness. We would not feel warranted in reversing the case because of this cross-examination, upon this record.

VII. The indictment charged appellant with buying, receiving, and aiding in concealing stolen property. On motion of appellant, the State was required to elect upon which charge it would stand, and elected to stand upon the charge that the offense was committed by willfully receiving stolen property, knowing the same to have been recently stolen from its owner.

8. CRIMINAL LAW: instructions: withdrawing charges not relied on.

Complaint is made of Instruction No. 5.

In Instruction No. 1, the court set out the indictment in full. In Instruction No. 5, the court told the jury that, under the indictment, the appellant was charged with committing the offense in three different ways: First, by merely buying the stolen property without receiving the same, when he knew it to have been stolen; second, by receiving stolen property when he knew the same had been stolen; and third, by aiding in concealing stolen property when he knew the same had been stolen. The instruction then definitely and clearly stated to the jury

that the State had elected to stand upon the indictment charging appellant with having committed the offense of willfully receiving the touring car in question knowing the same to have been recently stolen from its owner; and in said instruction the court expressly told the jury that the other ways in which the crime may be committed, as charged in the indictment, were withdrawn from the consideration of the jury.

The instruction definitely limited the jury to the consideration of the single charge upon which the State elected to rely. The instruction was not only proper in the form in which it was given, but appellant might well complain if the court had failed to give such an instruction, in view of the form in which the indictment was drawn. There was no error at this point.

VIII. Complaint is made of Instruction No. 9, in which the court told the jury that appellant was on trial only upon the charge made in the indictment, and that it should consider

9. CRIMINAL LAW: instructions: unnecessary repetition.

such charge only, and explained to the jury that evidence had been admitted of alleged similar offenses which it was claimed took place prior to the one alleged in the indictment, and that such evidence was proper to be considered by the jury as bearing upon the question of appellant's knowledge that the car in question had been stolen. Appellant complains that the court erred in said instruction and also in Instruction No. 10 in failing to specifically refer to the sole charge that was left for consideration by the jury after the withdrawal of the other charges.

Neither of said instructions is subject to the criticism lodged against it. As already pointed out, the court had previously instructed the jury that appellant was on trial under this indictment for the sole charge of receiving stolen property. In the instructions complained of, the court used the singular number, and referred to "the charge" made in the indictment. The jury could not, in view of the other instructions, have failed to understand that the only charge which they were to consider was the single charge of receiving stolen property.

These instructions were not erroneous.

IX. Instruction No. 11 is complained of as being contradictory, and as calculated to mislead the jury.

The instruction correctly charged the jury that, in order
to warrant conviction, the State must prove be-
yond a reasonable doubt that appellant received
stolen property knowing the same to have been
stolen. The court then instructed the jury that guilty knowl-
edge on the part of appellant could be proved by facts and cir-
cumstances, and correctly advised the jury in regard to the
facts and circumstances from which an inference might be drawn
that appellant had knowledge that the car in question had been
stolen. The instruction was proper, in view of the evidence in
the case, and contained a correct statement of the law. We find
no error therein requiring interference on our part.

*10. CRIMINAL LAW: instructions: contradictory instructions.*

We find no errors in any of the matters complained of by
appellant that require a reversal of the case. The evidence in
behalf of the State presented a question for the determination
of the jury, and the verdict has support in the evidence. The
judgment appealed from must be, and it is,—*Affirmed.*

ARTHUR, C. J., EVANS and PRESTON, JJ., concur.