THE STATE OF IOWA, Appellee, v. J. M. ALLEN, Appellant.

1. **Criminal Law**: MISCONDUCT OF JURORS: NEW TRIAL: DISCRETION OF COURT. Where in a criminal case a new trial was asked upon affidavits showing that two of the witnesses for the state, severally, and at different times, spoke to one of the jurors during the intermissions of the court, and while the trial was pending, eulogizing the prosecuting witness, and condemning the defendant; and that the foreman of the jury, during such an intermission, stated to a friend that court had to adjourn to give the prosecuting witness a rest, as the attorneys had worried him outrageously; and that the foreman, when the jury retired to consider its verdict, was apparently very anxious to procure a verdict against the defendant; and the trial court refused a new trial upon the case made, *held*, that the supreme court would not interfere, there being no showing that the juror encouraged the remarks of the witnesses, or believed what they said, or that the prosecution was in any way responsible for the irregularities complained of, or that the defendant was prejudiced thereby.

2. **Evidence**: ERROR WITHOUT PREJUDICE. Permitting improper questions to be asked a witness is not reversible error, where the answers are such that the appellant could not have been prejudiced thereby.

*Appeal from Cass District Court.*—HON. N. W. MACY, Judge.

FRIDAY, OCTOBER 6, 1893.

INDICTMENT for "uttering and passing a false and forged promissory note." There was a verdict of guilty, and a judgment, from which the defendant appeals.—*Affirmed.*

*De Lano & Meredith*, for appellant.

*John Y. Stone*, Attorney General, and *Thomas A. Cheshire*, for the State.

GRANGER, J.—Chauncey Slater and Sam Eagan were subpœnaed and in attendance as witnesses on the part of the state at the trial of the indictment. But one of them, Eagan, was examined as a witness. J. F. Harvey was one of the jurors impaneled to try the indictment. He makes the following affidavit, as one upon which a new trial should have been granted by the district court:

1. CRIMINAL law: misconduct of jurors: new trial: discretion of court.

"I, J. F. Harvey, being first duly sworn, on my oath depose and say that I was a member of the jury at the present term of this court, before which the case of the State of Iowa v. J. M. Allen was tried. That at one time, as I was leaving the courthouse after an adjournment of the court for the noon recess, or at the close of the day, and while the said cause was on trial before the said court and jury, one Chauncey Slater, who was present during the said trial as a witness for the state, as I am informed and believe, fell in company with me as I was leaving the said courthouse, and accompanied me down to Walnut street, and, while on the way to the place where we parted company, he began to talk with me concerning the prosecuting witness, N. Hamlin, and persisted in telling me that he had known him for a great many years; that he was a nice old man; that nobody was ever turned away from his place hungry, and eulogized him very highly as a man; that there was nothing good in the defendant, Allen, and he was imposing on the old man, Hamlin, and spoke very disrespectfully of and concerning said Allen. That, as we parted, said Slater asked me why I did not come out to see him, and told me, if I got out in that part of the country, the latchstring was out. That, soon after the verdict was rendered in said case, I met the said Slater again, and he shook hands with me, and took occasion to congratulate me on the verdict rendered; that I did not invite the conversation

with the said Slater concerning the said Hamlin, but
tried to turn the conversation upon some other subject;
that, at another time during the said trial, one Sam
Eagan, who was a witness upon the part of the state,
made it convenient to fall in with me as I was leaving
the courthouse, and walked through the park and
down the street with me, and commenced a conversa-
tion with me concerning the old man, Hamlin, the
prosecuting witness, and said Eagan remarked to me
that he had known Hamlin a good many years; that
he was a nice old man; that nobody had anything
against him, in any shape, that he ever knew of; and
that the defendant, Allen, was a kind of a scalawag,
scapegoat, or something to that effect; that I did not
begin or invite the said conversation with the said
Eagan, and introduced conversation upon some other
topic. And I further state that, after the jury had
retired to consider upon a verdict in the said cause, the
foreman of said jury, O. J. Ostrus, was apparently
very anxious to secure and return a verdict against the
defendant, and urged very strongly upon the other
jurors that a verdict of conviction should be returned
therein. [Duly verified.]       J. F. HARVEY."

N. Hamlin is the person whose name is alleged in
the indictment to have been forged.

There is no claim that the prosecution was in any
way responsible for the conduct of Slater or Eagan,
and there is no error in the refusal of the court to grant
a new trial because of it. Harvey took no part in the
conversation, nor does it appear that he ever
believed what was said. It will not do to set aside
verdicts merely because jurors, during a trial, obtain
information as to the character of litigants, or those
standing in the relation of litigants, without the fault
of the parties, unless there are reasons to believe that
because of such information the trial has been unfair.
In such matters the trial court is necessarily invested

with a large discretion. Its opportunity to know or to properly determine a question of prejudice is better than ours can be. This advantage on the part of the district court is inherent in its situation and surroundings. Prejudice is not to be presumed at all times because of misconduct. *State v. Woodson*, 41 Iowa, 425. Just when it will or will not be presumed can not be definitely determined. Conceding all that should be claimed as to people being unconsciously influenced by words or acts of others, and the situation is not changed. In some cases the law will assume prejudice, and in others not. Of the many cases cited where verdicts have been set aside, none are like this in all essential particulars. Although it is a civil case, we think the rule announced in *McCash v. City of Burlington*, 72 Iowa, 26, is controlling as to that point. In line with our conclusion are the following cases: *Martin v. People*, 54 Ill. 225; *McKenzie v. State*, 26 Ark. 334; *State v. Fruge*, 28 La. Ann. 657; *Barlow v. State*, 2 Blackf. 114; *Flanegan v. State*, 64 Ga. 53; *Hill v. State, Id.*, 453; 2 Thompson on Trials, section 2553.

In support of the motion for a new trial is the affidavit of one Dickerson, who was an employee in the Cass County bank. He states in his affidavit that the juror Ostrus came into the bank one day and his brother asked Ostrus if court had adjourned, and Ostrus "answered, that it had to give the old man Hamlin a rest, as the attorneys had worried him so." He said "it was an outrage the way they worried him; had questioned him about his affairs from his childhood up, and all through his business life." This, in connection with the affidavit of Harvey as to the efforts of Ostrus to secure a conviction, is urged as misconduct for which a new trial should be granted. While it would be better for jurors to refrain from even such remarks pending a trial, nothing indicates to us that

the efforts of Ostrus to secure a conviction were not the result of his convictions from the evidence. We see nothing in what was said at the bank to indicate that Ostrus favored either side at the time of the remark. One whose sympathy was with the defense might have been alike impressed by the course pursued in the examination. It is true the examination might have had its influence upon his mind, and possibly have induced a prejudice, as is likely many times the case. The methods and character of examinations of witnesses are proper matters for jurors to observe and consider in weighing the testimony adduced, and they undoubtedly attached much importance, in their deliberations, to the fact of whether the examination was fair or unfair to the witness, and, with proper limitations, it is right that they should. We are not to be understood as impliedly holding that the verdict could be impeached by the affidavit of Harvey as to the conduct of Ostrus during the deliberations of the jury. Our considerations have been induced by the showing of what occurred at the bank.

II. Sam Eagan was called by the plaintiff in rebuttal, and it is urged that the testimony sought was not properly rebutting. Quite a number of questions were asked of the witness, the answers to a part of which were excluded by the court. As to some of the questions, the objections were overruled. The questions were as to conversations with the defendant, with a view to prove his statements in certain particulars, and the result was that the witness failed to testify to the facts, and the answers were of no importance in the case, and could have no influence with the jury against the defendant. We need not consider the correctness of the rulings.

2. EVIDENCE: error without prejudice.

There is a claim that the verdict is not supported by sufficient evidence, but to our minds it has full support. The judgment is AFFIRMED.