## STATE OF IOWA v. A. J. WRIGHT AND WILLIAM BALDWIN, Appellants.

**Liquor Nuisance:** CONVICTION SUSTAINED. In a prosecution for maintaining a liquor nuisance, evidence that in the cellar of the hotel kept by one of the defendants were found several barrels of bottled beer, and a half barrel of brandy, and tub of ice containing, also, bottled beer, that there were tables, cards, and chairs in the cellar, and empty beer bottles; that in the cellar there was an electric bell, connected with a push on the first floor; and that the other defendant was in the cellar, in his shirt sleeves, apparently in charge,—warrants a conviction of both defendants.

**Evidence:** PRACTICE. A motion to strike out an answer that the witness saw "bottles of beer, or what he supposed to be beer," is properly refused, where no objection was made to the question, which was, "Did you see what was in these barrels?" and no ground assigned for the motion.

**Misconduct of Jury:** NON-PREJUDICIAL. In a prosecution for the illegal sale of liquor, the fact that one juror, while the jury were in deliberation, stated to the others that he knew that defendant had sold liquor, as he had purchased it, is not ground for the reversal of the conviction, where the jurors who heard the statement testified that they did not consider it, in arriving at the verdict.

SAME. That the jury in a criminal case are allowed to separate for a brief time, contrary to the provision of Code, section 4442, during which separation one member states to an outsider that the jury has done nothing yet, is not ground for a new trial, where it is affirmatively shown that no prejudice resulted therefrom.

**Appeal:** NEW TRIAL: *Abstracts.* A motion for new trial will be presumed, on appeal, to have been properly denied, where there is no statement that the abstract contains all the evidence on which the court acted in ruling upon such motion.

*Appeal from Hamilton District Court.*—HON. S. M. WEAVER, Judge.

WEDNESDAY, OCTOBER 7, 1896.

THE defendants were jointly indicted, tried and convicted of the crime of maintaining a liquor nuisance, and, to reverse the judgment of the court below, they appeal.—*Affirmed.*

*D. C. Chase* for appellants.

*Milton Remley,* attorney general, and *Jesse A. Miller* for the state.

DEEMER, J.—Error is assigned upon the misconduct of the jury—*First,* in separating before agreeing upon a verdict, and while in the charge of an officer; *second,* on account of a statement made by a juror to his fellows, while in the jury room, and before an agreement was reached. It appears from the record that, after the cause was submitted, and before a verdict was reached, the bailiff took the jury to an hotel for supper; that, after they had eaten their supper, and as they were starting to return to the court house, Jurors Lee, Fairchild, and Lakin, by permission of the bailiff, separated from the other jurors, and went to the postoffice. As Juror Lee came out of the postoffice, he met Judge Hiatt and one, Weston, and one or both asked him what the jury had done. Lee replied that they had done nothing as yet, and immediately returned to the court house, where he rejoined his fellow jurors. It does not appear that the other jurors, who left the main body at the hotel, had any conversation with anyone, but it is shown that they returned to the court house immediately after going to the postoffice. It also appears

that none of the jurors who went to the postoffice were gone any length of time, and it is further shown that they rejoined the panel at the court house, reaching there at nearly the same time as those who went directly from the hotel. The statutory provision relating to the separation of the jury in criminal cases is as follows (Code, section 4442): "After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place without meat or drink, water excepted, and not to suffer any person to speak to, or communicate with them, nor to speak or communicate with them themselves unless it be to ask them whether they have agreed upon their verdict, and not to communicate to any one the state of their deliberations, or the verdict agreed upon, until after the same shall have been declared in open court and received by the court, and to return them into court when they shall have so agreed upon their verdict, unless by permission or order of the court, or they be sooner discharged." Now, while this statute does not, in express terms, require that the jury be kept together after the submission of the case, as does the section of the Code (section 2791) relating to civil cases, yet such is its fair import; and, for the purposes of the case, it may be conceded that the provisions are the same. It seems clear, then, that this statute was violated in this case; and the question which arises is, did this misconduct constitute ground for a new trial? The case of *State v. Wart*, 51 Iowa, 587 (2 N. W. Rep. 405) seems to settle this inquiry. We there held, under a somewhat similar state of facts, that in the absence of a showing of prejudice, the separation was not such misconduct as to vitiate the verdict. In this case, there is not only no showing of prejudice, but affirmative proof that there was none. See also *State v.*

*Bowman*, 45 Iowa, 418; *State v. Fertig*, 70 Iowa, 272 (30 N. W. Rep. 633); *State v. Griffin*, 71 Iowa, 372 (32 N. W. Rep. 447). The communication had by Juror Lee with Judge Hiatt or with Weston was clearly without prejudice, and constituted no ground for a new trial. See cases above cited; also *State v. Fertig*, 84 Iowa, 79 (50 N. W. Rep. 545).

II. The next complaint made is that one of the jurors, after the submission of the case, and while the jury was deliberating upon its verdict, stated to some one or more of the jurors that "he knew liquor had been sold at this place, as he had drank it there himself, or words to that effect." The two jurors who testified to this statement, each said that they did not consider it in arriving at their verdict, and that it had no effect upon them. It is not shown that any of the other jurors heard these statements, or that they were in any manner influenced by them. It seems to be the rule in this state that such misconduct is not enough to vitiate the verdict, unless prejudice be shown, or sufficient grounds appear for presuming prejudice. *State v. Woodson*, 41 Iowa, 425; *State v. Beasley*, 84 Iowa, 83 (50 N. W. Rep. 570). Prejudice was not shown, and we do not think that we ought, in the face of the ruling of the trial court, to presume any. The court trying the case is necessarily invested with large discretion in such matters. Its opportunity to know and to properly determine the question is better than ours, and we do not think this is a case where we should interfere. The conduct of the juror was exceedingly reprehensible, but we must presume that the jury understood, as those who testified to hearing the statement said they did, that their verdict should be founded upon evidence properly submitted to them. See *State v. Allen*, 89 Iowa, 49 (56 N. W. Rep. 261). A further answer to the appellants' contention is that it does not

appear that we have all the evidence upon which the court acted in overruling defendants' motion for a new trial. True, the abstract says that the evidence was duly certified and made a part of the record, and that a certificate of the trial judge was made, stating that the shorthand notes contained all the evidence that was offered or introduced on said trial, and all motions, objections, and rulings made and exceptions taken. But there is no statement anywhere that we have in the abstract, all the evidence upon which the court acted in ruling on the motion for a new trial. In view of the record presented, all presumptions are in favor of the correctness of the court's ruling. See *Grannis v. Railroad Co.*, 81 Iowa, 444 (46 N. W. Rep. 1067); *Wagner v. Condron*, 73 Iowa, 753 (33 N. W. Rep. 159).

III. Witness Welch was asked by counsel for the state, this question, "Did you see what was in those barrels?" to which he answered, "Saw bottles of beer, or what I supposed to be beer." Defendants moved to strike out the answer, but assigned no reason therefor. The motion was overruled, and an exception taken. It is sufficient to say in answer to the complaint made of this ruling that as no objection was made to the question, and no ground assigned for the motion, it was properly overruled.

IV. Defendant Baldwin, at the close of the evidence, asked a peremptory instruction directing a verdict of acquittal as to him. He now insists that this instruction should have been given, and both he and his co-defendant contend that there was not sufficient evidence to justify the conviction of either. These propositions may be considered together. From the record we find there was evidence tending to establish the following facts: Defendant Wright was the proprietor of what is known as

the "Grand Hotel" during the period of time covered by the indictment. On the twenty-eighth of June, 1894, the sheriff of Hamilton county made search of the premises, and after winding his way through various trap-doors, cellars, false partitions and concealed compartments, finally found a keg half full of brandy in one cellar, and two unopened barrels of bottled beer in another. In one of the cellar rooms he found a tub of ice containing about a dozen bottles of beer. In this room, there were also bottles lying on the floor; also about half a barrel of bottled beer, a shelf, table, a lamp and some tumblers. On the wall was an electric bell, connected to a push on the first floor of the hotel. There were also chairs around the table, and a pack of cards and some bologna sausage upon it. While the search was being made, two men came into the cellar and called for beer. At the time the search was being made, defendant Baldwin was in the west cellar, and had his coat off, and was, apparently, in possession. It also appears, that Baldwin asked a drayman to haul some barrels, which would weigh about two hundred pounds, from the depot to the hotel, and that Baldwin, when he made the request of the drayman, denominated the barrels as "stuff." The drayman also testified that he hauled the barrels, a few nights before the search, to the hotel, and unloaded them at the rear end of the building. The barrels containing the beer had the same marks upon them as those taken from the depot. Defendant Wright testified that he was proprietor, and had entire charge of the house. There are other circumstances which the state relies upon, to which we do not refer. Enough has been stated to show, that the jury were justified in finding that both defendants were concerned, engaged, or employed in keeping, if not in selling, intoxicating liquors, in the building in question, contrary to law. What our conclusion would be, had we to try the case

anew, is a matter of no importance. Our inquiry is, is the verdict so unjust, and so clearly against the weight of the evidence, as that we ought to interfere? The statement which we have made of some of the evidence adduced, is sufficient answer to the query.

Some other questions are discussed by counsel, but enough has been said to demonstrate the correctness of the rulings of the court, and the sufficiency of the evidence to support the verdict. No prejudicial error being shown, the judgment is AFFIRMED.