GLENDA TILBURY, A MINOR, BY ROBERT A. TILBURY, HER FATHER AND NATURAL GUARDIAN, AND ANOTHER v. EARL WELBERG.[1]

November 28, 1952.

No. 35,782.

[1]Reported in 55 N. W. (2d) 685.

*Johanson, Winter & Lundquist* and *Marvin E. Lundquist,* for appellants.

*English & Velta,* for respondent.

KNUTSON, JUSTICE.

Appeals from judgments entered upon verdicts of a jury in favor of defendant in two actions. One of the actions was brought by Glenda Tilbury, a minor, by Robert A. Tilbury as her father and natural guardian, to recover damages for personal injuries alleged to have been sustained by her in a collision between a bicycle she was riding and an automobile owned and driven by defendant. The other action was brought by Robert A. Tilbury to recover for medical and hospital expenses, loss of services, and damage to personal property. The two cases were tried together, and appeals from judgments entered therein have been heard together here. For convenience, we shall refer to Glenda Tilbury as plaintiff.

State aid road No. 7 in Lac qui Parle county, which will be referred to hereinafter as the highway, runs substantially north and south at the point involved. It is a gravel-surfaced road 26 feet wide with a traveled portion 24 feet in width. The accident here involved occurred on June 15, 1950, about 11:30 a. m. at a point on this highway about seven miles south of Ortonville, this state. Three farm driveways enter the highway at that point, one from the Kenneth Reichert farm on the west side of the highway and two from the Forrest Reichert farm on the east side of the highway. The south driveway on the east side of the highway is directly opposite the driveway on the west side; the other driveway on the east side is about 100 feet north of the south driveway. On the south side of the west driveway, near the point where it intersects the highway, there is a large cottonwood tree, the branches of which commence about 15 feet from the ground. Another large tree is located on the fence line west of the highway and a short distance south of the

large cottonwood tree. There are a number of clumps of smaller trees south of these large trees. Vision to the south is obscured by these trees to such an extent that a person standing five feet west of the junction of the driveway with the highway can see objects on the highway for a distance of only about 20 to 30 feet south. Standing two feet west of the junction, the view to the south is unimpaired. There are two "slow" signs of the customary type and size on the highway, one about 400 feet south of the west driveway and the other about the same distance north.

On the day involved, defendant was driving his 1950 Nash automobile north on this highway. His father-in-law and his brother-in-law were in the front seat with him, and some young people occupied the back seat. They were all on their way to Ortonville where they intended to do some fishing. Defendant's testimony is that he was traveling about 45 miles per hour and that he slowed up when he passed the "slow" sign. The day was clear and the highway dry. Defendant was familiar with the highway and knew of the two Reichert farms although he did not know the exact location of the driveways into the farms.

Plaintiff is a sister of Donna Reichert, whose husband, Forrest, owned the farm on the east side of the highway. At the time of the accident plaintiff was ten years of age. She frequently visited at her sister's home and was thoroughly familiar with the highway and the driveways into the two farms. She had been warned of the dangers of entering the highway from the driveways. Her sister testified that plaintiff had been warned in that respect. Donna's testimony in that regard was as follows:

"Q. I suppose that you and your mother had cautioned her about going across this highway, telling her to be careful when she went across the highway?

"A. Yes.

"Q. So that she knew that the highway was there?

"A. Sure she did.

"Q. And she knew that it was a place of danger for a child on a bicycle?

"A.  Yes.

"Q.  And she had been told that by you and your mother a number of times before this accident happened.

"A.  Well, she knew that.

"Q.  But, so that she didn't forget it, you warned her to be careful about that, going across the highway?

"A.  Yes, we did."

A small boy by the name of Randy lived on the farm on the west side of the highway and owned a bicycle which plaintiff frequently used when visiting her sister. Plaintiff had crossed the highway on the bicycle at least twice on the day of the accident. Since she suffered a loss of memory as a result of the accident, her testimony is not at all helpful in disclosing how the accident happened.

Defendant and the two men who were riding in the front seat of his car with him all testified that defendant drove on his side of the highway prior to the accident. Defendant stated that he first saw plaintiff when she was about 20 to 25 feet from him and that he tried to turn to the right but did not have time to do so. He testified that he was then traveling about 45 miles per hour and that he stopped in about 75 feet and backed up to where plaintiff was lying in the road. The two men riding in his car testified that they removed the bicycle from the highway to the ditch bank on the west side of the highway. The accident produced two dents in the left front fender of the car and the rear view mirror attached to the left door of the car was torn off, as was a chrome strip along the fender.

Plaintiff sought to establish that defendant was driving on the wrong side of the highway by the testimony of Kenneth Reichert and his brother Forrest, who arrived at the scene of the accident in Kenneth's truck about 10 or 15 minutes after it occurred, and by other witnesses, all of whom testified that they observed tire tracks on the west lane, or partly on the west lane and partly in the center of the highway, running some distance north and south from the point of impact. They could not say whether defendant's car made the tracks involved, but they sought to have an inference drawn that defendant's car had made the tracks from their testimony

that the tracks stopped some 250 feet north of the point of impact and other testimony that they saw no other car travel over the highway from the time of the accident until they made their observations.

Plaintiff's witnesses fixed the most northerly point of the impact, by the location of a large blood spot where plaintiff lay, at a point not more than 24 feet north of the west driveway and about 2½ to 4 feet east of the west line of the highway. Photographs were taken by the Reicherts the same day, with various persons standing in the location of the blood spot and the place where they first observed the bicycle to be, definitely fixing the most northerly point where they claim either of these locations to be.

After the accident, defendant assisted plaintiff's mother, who was also visiting at the Forrest Reichert farm, in taking plaintiff to a hospital. There is no dispute that she was seriously injured.

■ Plaintiff first contends that defendant was guilty of negligence as a matter of law and that the court erred in refusing to so charge the jury. This contention merits no discussion. On the evidence before us it is clear that the question of defendant's negligence was for the jury.

Plaintiff next contends that the court erred in refusing to instruct the jury that "Where children are known or may reasonably be expected to be in the vicinity a degree of vigilance commensurate with the greater hazard created by their presence or probable presence is required of a driver to measure up to the standard of what the law regards as ordinary care."

This accident occurred in a completely rural area. The driveways in question are not different from those found at the entrance to any ordinary set of farm buildings. The evidence fails to show any reason why a driver should anticipate the presence of children at this place any more than he should at or near the driveway entering any other farm. The rule is applicable only to those places where children are known to be or where, by the nature of the place itself, children may reasonably be anticipated to be. While it might be said that there may be children any place where people are

known to live, the rule does not have such broad application. The only reason that it could be said that defendant might anticipate that there would be children in the vicinity of this driveway is that he undoubtedly knew that people lived in the farm buildings in close proximity to the highway. The rule obviously has no application to the evidence in this case, and the instruction was correctly refused.

■ Error is next assigned for refusal to submit to the jury the usual instruction regarding an emergency. The evidence fails to establish any emergency not created by plaintiff's own act and there is no showing that she chose one of two or more courses of action open to her as the result of an emergency in which she found herself. It was not error to refuse the instruction under these circumstances.

■ Plaintiff requested the court to read to the jury that portion of M. S. A. 169.20, subd. 1, which provides:

"The driver of any vehicle or street car traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

There is no evidence here of any unlawful speed. The court correctly charged the jury respecting the applicable statutory rule regarding speed under the circumstances here existing. It was not error to refuse the requested instruction.

■ Plaintiff's next assignment of error is based on the refusal of the court to instruct that "The plaintiff, Glenda Tilbury, had the right to rely on defendant's using due care at the time and place of this collision." The court's charge respecting the care required of defendant, as well as of plaintiff, was adequate. Negligence and contributory negligence, as well as proximate cause, were sufficiently defined. Both parties had a right to assume that the other would exercise due care until the contrary became apparent. The duty of each to the other is fully covered in the charge. We fail to see that prejudice could result from failure to instruct as requested. If the instruction had been given at all, it should have been given so as to apply to both parties.

■ Plaintiff also contends that the court erroneously refused to instruct the jury on the failure of defendant to use brakes and to sound a horn. The evidence is conclusive that defendant could not have seen plaintiff until she was almost out on the highway. Neither could plaintiff see defendant on account of the trees which obstructed her view. However, it was her duty to yield the right of way to defendant. When she was two feet from the junction of the driveway and the highway, her opportunity to see defendant's car was unlimited. The use of a horn is intended for the purpose of warning the other party of the presence of the automobile. No reason has been shown here why plaintiff could not have seen defendant had she looked before entering the highway. The evidence is also conclusive that defendant did not see plaintiff until he was 20 to 25 feet away from her. Under these circumstances, there was no opportunity to apply his brakes. It was not error to refuse these requested instructions under the evidence before us.

■ Plaintiff complains of certain statements made by the trial court to the jury in its charge which apparently were deemed necessary by the court because of statements made by plaintiff's counsel in summing up the case to the jury. As a preliminary to his main charge on the law, the court said:

"There is one other point that I think should be drawn very carefully to your recollection of the testimony. That is that Glenda was thrown some sixty or seventy feet. Well, the testimony that plaintiff is relying very much on as to the spot that Glenda was in when this accident happened was this blood spot and that you will notice was just a few feet, possibly twelve or fifteen feet, north of the north edge of the driveway. So coming out of the driveway and the blood spot being found on that particular place, she could not have been thrown sixty or seventy feet. I think that there is just a little misunderstanding of the testimony there. So I want to bring those out to clear the path for the general instructions and for your consideration."

Plaintiff contends that, under the rule that counsel should be allowed much latitude in summing up his case to the jury, these re-

marks were prejudicial and that, on account thereof, there should be a new trial.

The final argument of plaintiff's counsel is not in the record. An examination of the record shows that all of plaintiff's witnesses and all of defendant's witnesses, with the exception of one, place the body of plaintiff not more than 24 feet north of the driveway out of which she rode her bicycle. On cross-examination of Frank Tilbury, who was called as a witness by defendant, the following testimony was elicited:

"Q. And the little girl was partly on the bicycle even then?

"A. Well, she was mixed up in the bike.

"Q. Did you see the bicycle out there?

"A. I did.

"Q. Is it in the same condition as before?

"A. It looks like about the same condition. I wouldn't say. I didn't pay a whole lot of attention. I picked up one part and laid it off the side of the road.

"Q. Did you lay it off right directly towards this shoulder from there?

"A. I wouldn't say that I did. I might have laid it a little north.

"Q. And it might have been a little south?

"A. I don't think so.

"Q. You don't know?

"A. I don't think so.

"Q. How far do you think that you backed up?

"A. Well, I don't think we was over eight or ten feet from the girl when we stopped.

"Q. Eight or ten feet from the girl when you stopped?

"A. Yes, that is what I judge.

"Q. That is, if you were seventy-five feet north of the driveway when you stopped, the girl would be about sixty-five feet north of the driveway?

"A. Yes, sixty-five, or sixty-seven, or sixty-eight, or something like that.

"Q. And that is where the bicycle was?

"A. That is the driveway on the west side?

"Q. That is right?

"A. Yes.

"Q. Sixty-five, or sixty-seven, or sixty-eight feet?

"A. Something around there.

"Q. North of that driveway?

"A. I wouldn't get it down to that."

On direct examination he testified:

"A. We picked the bicycle up. We picked it up really before they picked her up. She was tangled up in it and I had to move the bicycle to get her out.

"Q. Who picked up the bicycle?

"A. I picked up one part of it and laid it on the bank of the road and Mr. Bothum the other part.

"Q. Well, where was the bicycle approximately when you picked it up?

"A. Well, it was five or six feet from the edge of the road.

"Q. From which edge?

"A. The west edge."

There was no question but that Frank Tilbury agreed with the others that the girl and the bicycle were in substantially the same location. Plaintiff's witnesses all fixed the location of plaintiff by a blood spot in the road. They even went so far as to take photographs of the locale of the accident on the day it occurred and definitely fixed the various locations by having people stand where the blood spot was found and where they first observed the bicycle. Defendant's counsel stated that in spite of this positive evidence plaintiff's counsel, in his argument to the jury, stated that the girl "went flying through the air" 67 or 68 feet. Counsel for plaintiff does not deny making such argument, nor does he now contend that plaintiff was found more than 24 feet north of the driveway.

While it is the rule that in the summation of a case to the jury counsel should be given considerable latitude in pointing out such inferences as he believes reasonably may be drawn from the evi-

dence, the rule does not confer on counsel a privilege which has no bounds. Where counsel seeks to have the jury draw inferences which clearly are not justified by the evidence, it is not only permissible for the trial court to call the jury's attention to the fact that such inference is not warranted by the evidence, but it is the court's duty to do so. In view of the positive testimony of plaintiff's own witnesses and all others except Frank Tilbury, there was no dispute as to the most northerly point where plaintiff could have been found after the accident. It must have been apparent to everyone that Frank Tilbury was either confused or mistaken. Even he placed the body of plaintiff at the place where the bicycle was found, and there was no dispute in the evidence as to that location. While the argument of counsel does not appear in the record, if he did make the statement attributed to him, the court, on the record we have before us, was entirely justified in cautioning the jury as it did. If counsel did not make such statement, the court's cautionary instructions could hardly have been prejudicial.

What we have said regarding this statement of the court applies equally to counsel's alleged argument regarding the brakes and horn and the court's cautionary instruction in regard thereto.

We fail to find any reversible error.

Affirmed.