BETTY BURNS AND ANOTHER v. OTTELIE KVERNSTOEN
AND ANOTHER.
RUTH KVERNSTOEN AND ANOTHER v. PETER
SCHWEITZER, INC., AND ANOTHER.[1]

December 30, 1955.

Nos. 36,597, 36,598, 36,599, 36,600.

---

[1]Reported in 74 N. W. (2d) 398.

*Leslie C. Scholle,* for appellants.
*Harry S. Stearns, Jr.,* and *Walter H. Mann,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Actions arising out of a head-on collision between an automobile owned by Peter J. Schweitzer, Inc., and driven by Robert Burns, in which Betty Burns, his wife, and Patricia Burns, his daughter, were passengers, and an automobile owned by Ottelie Kvernstoen and driven by Ruth Kvernstoen. The accident took place August 1, 1953, about 2 p. m. on U. S. highway No. 52 some six miles northwest of St. Cloud.

On August 20, 1953, the Kvernstoens instituted actions against Robert Burns and Peter J. Schweitzer, Inc., for injuries and prop-

erty damages. Therein, a counterclaim for property damages was interposed by Peter J. Schweitzer, Inc., and one for personal injuries was interposed by Robert Burns. On September 25, 1953, Betty Burns and Patricia Burns, a minor, by Robert Burns, her father, instituted actions against the Kvernstoens for injuries sustained by them as a result of the accident. The actions were consolidated for trial, the jury returning verdicts against Ruth Kvernstoen and Ottelie Kvernstoen in favor of Betty Burns in the sum of $1,066; Robert Burns in the sum of $6,267; and Peter J. Schweitzer, Inc., in the sum of $1,800. The appeals are from an order of the district court denying the Kvernstoens' motions for judgment notwithstanding the verdicts or for new trials in each of the actions.

On appeal it is contended that the evidence does not establish negligence on the part of Ruth Kvernstoen proximately causing the accident; that as a matter of law Robert Burns was guilty of such negligence; and that certain statements made in the presence of a juror, by Frank Morgel, a witness who testified in behalf of the Burnses, as well as certain statements made by their counsel in his argument to the jury with respect to the credibility of this witness, constituted such misconduct as to result in a mistrial.

With respect to Morgel's misconduct upon which the claim of mistrial is based, the record indicates the following: Morgel, who testified in behalf of the Burnses, was a member of the jury panel for the term in which these actions were to be tried but was not drawn as a juror on this particular case. He first learned that he had witnessed the accident involved in this case when he heard the opening statement of counsel for Kvernstoens on November 9, 1954. Such counsel's recitation of the facts recalled to his mind that he had been a witness to the accident, although previous to this time he had not known the names of the parties or known that the litigation was pending. Thereafter, he reported his knowledge of the case to Robert Burns, and at that time, the court was advised that he was to be a witness.

On November 12, 1954, Morgel submitted his testimony on behalf of the Burnses. He returned to the court with the general panel

when it was recalled November 15, 1954. In the interim there is nothing to indicate that he came in contact with any member of the jury on this case or in fact mingled with other members of the panel. Shortly before resumption of trial herein on November 15, 1954, it appears that a statement made by Morgel outside the courtroom to persons not involved in the litigation had been overheard by a member of the jury in the instant case. The court's attention was called to this situation, and before proceeding further with the trial, the court addressed the jury as follows:

"'* * * a complaint was made to me that Mr. Morgel, who was a witness here, and who is on this jury panel * * * this morning upon his return came and visited with some of you jurors. * * * I now ask each of you, * * * whether Mr. Morgel or anyone else talked to you about this case. Did Mr. Morgel talk to you? * * *

* * * * *

"Juror: Yes, he did.

"The Court: About the case?

"Juror: Not much that he said.

"The Court: Would you prefer to talk to me privately?

"Juror: Yes.

"The Court: Did Mr. Morgel talk to you? (All remaining jurors answered 'No'.)"

The court thereupon privately interviewed the juror who had stated that Mr. Morgel had talked to him as follows:

"The Court: You said he did not say anything to you, who was he talking to? Was he talking to somebody else?

"Juror: There was more around but I don't know each.

"The Court: Not to any juror on this panel, on this case?

"Juror: I don't know, I don't think so.

"The Court: What did you overhear him say?

"Juror: Well, it seems to me, he said that I went in there on the chair and I said true.

"The Court: He went in the chair, the witness chair?

"Juror: Yes.

"The Court: You don't know to whom he said that?

"Juror: I don't think he was on the case.

"The Court: * * * That is absolutely all you have?

"Juror: Yes, nothing I have on my conscience.

"The Court: Whatever you heard would not influence you?

"Juror: No."

Counsel for Kvernstoens then moved for mistrial on the foregoing incident, which motion was denied.

In his argument to the jury, counsel for the Burnses stated the following:

"By Mr. Stearns: * * * And then the very day the case was started and Mr. Scholle had given his opening statement and he had mentioned something about a green car that had a flat and that after the accident was parked in the Schmitt driveway down there, one of the jurors, a member of the jury panel, heard that and that was his car and he recognized it immediately, and he did what was the correct thing to do naturally, jurors, not to discuss the case among each other when they are not a witness to it, but here when he found out he was a witness to this case he did exactly what the law requires him to do and what as a citizen he should do, he went up and reported so that we would know that he was a witness. Mr. Scholle made * * * a certain amount on his cross examination of the fact why didn't he go and report it to Mr. Scholle instead of coming to Burns and telling us it was his car. He knew what he was doing, put yourself in that position, * * * you know you are going to be called on to report it to somebody, do you go to the side you feel was wrong in the accident?

"Mr. Scholle: Just a moment, * * * I think counsel is now getting into a field that is not proper argument.

"Mr. Stearns: I think that is proper argument.

"The Court: Will you step up here please.

"(Discussion between Court and counsel at the bench.)"

Thereafter, Mr. Stearns continued as follows:

"Mr. Stearns: So that he reported this accident, and everything he told you was exactly the story that Mrs. Burns had, the only major difference is that he was quite convinced that Ruth was passing another car directly in front of him. I personally think that Frank Morgel was wrong in that but from where he was I think that any of us would come to the same conclusion. * * * As far as my opinion is concerned I think the accident happened on the shoulder on the wrong side of the road by the Kvernstoens, and everything that Frank Morgel told you was absolutely true. * * *"

At the close of the trial court's instructions, counsel for the Kvernstoens again moved for mistrial as follows:

"* * * the parties Kvernstoen, not satisfied that the error in connection with the witness Morgel could have been or was corrected by the instruction of the Court, take exception to the Court's denial of their motion for a mistrial, and renew their motion. * * *

"The Court: * * * motion is again denied as to mistrial."

■ The first issue for determination is that of negligence. There is a sharp dispute as to which car was not in its proper lane on U. S. highway No. 52 at the time of the accident. Substantial evidence submitted on behalf of the Burnses would appear to sustain a finding that his car, then traveling in an easterly direction, was in its proper lane on the highway when the Kvernstoen car, coming from the opposite direction, turned first onto the north shoulder of the highway and thereafter turned back onto the highway at a 45-degree angle and continued across it into the south lane directly in the path of the Burns car so that the collision resulted. This finds support in the testimony of the witnesses Betty Burns, Frank Morgel, and Alois Morgel; in photographs which showed mud and debris of the Kvernstoen car at a point well south of the center line; in skid marks left by the Kvernstoen car, starting from a point off the north shoulder and continuing for a distance of 40 feet until the car's right wheels were but one and one-half to two feet north of the center line of the highway; and in evidence indicating that both cars had come to rest south of the center line of the highway immediately following the accident.

It is true that testimony to the opposite effect was submitted in behalf of the Kvernstoens and that circumstances in connection with the testimony submitted by both sides might affect the credibility of the respective witnesses or the weight of their testimony. However, we cannot escape the conclusion that all such factors made this issue a proper one for the jury's determination; and, as indicated above, there being evidence sufficient to support its finding thereon, under well-established rules governing our actions in appeals of this kind, we must yield to its judgment with respect thereto. Sanders v. Gilbertson, 224 Minn. 546, 29 N. W. (2d) 357; Johnson v. Evanski, 221 Minn. 323, 22 N. W. (2d) 213. If the jury believed the testimony and evidence which indicated that the Kvernstoen car had crossed into the south lane of the highway, the actions of the driver in connection therewith constituted negligence; and it can scarcely be questioned that such negligence was the proximate cause of the accident.

■ Likewise, we feel that the issue of contributory negligence on the part of Robert Burns was a matter for the jury's determination. It is not disputed that he drove approximately one foot over the center line into the north lane of the highway in passing a car belonging to the witness Frank Morgel which was then coming to a stop on the south shoulder of the highway. There was substantial testimony, however, that prior to the collision Burns had returned to the south lane and was traveling therein when struck by the Kvernstoen car. Certainly, his action in traveling a foot over the center line in passing the Morgel car could not, as a matter of law, be said to be negligence proximately causing or contributing to the accident if before the accident he had returned to his proper lane. We must hold that this issue was for the jury and that there is ample evidence to sustain its finding thereon. Leitner v. Pacific Gamble Robinson Co. 223 Minn. 260, 26 N. W. (2d) 228; Standafer v. First Nat. Bank, 243 Minn. 442, 68 N. W. (2d) 362.

■ As to the contention that the remark of the witness Frank Morgel, overheard by one member of the jury, was so prejudicial as to result in a mistrial, we feel that determination of this question

properly rested within the discretion of the trial court. State v. DeZeler, 230 Minn. 39, 41 N. W. (2d) 313, 15 A. L. R. (2d) 1137; State v. Soltau, 212 Minn. 20, 2 N. W. (2d) 155; Oswald v. Minneapolis & N. W. Ry. Co. 29 Minn. 5, 11 N. W. 112; 39 Am. Jur., New Trial, §§ 100, 101; Annotation, 22 A. L. R. 254. His comment to the effect that his testimony had been truthful constituted no more than a repetition of the oath previously taken by him as a witness within the hearing and presence of all members of the jury. The sole juror overhearing it assured the court that it would not influence him in his determination of the facts. Subsequently, the court in its instructions admonished the jury to "pay no attention to anything that you might have heard outside the jury box, but * * * consider only the evidence that you have heard under oath from the witness stand." See, State v. Becker, 231 Minn. 174, 42 N. W. (2d) 704.

Decisions relied upon by counsel for Kvernstoens on this issue (State v. Snow, 130 Minn. 206, 153 N. W. 526; Magnuson v. Bouck, 168 Minn. 39, 209 N. W. 896) involved communications or associations between parties directly interested in the litigation and members of the jury which were obviously prejudicial in nature— situations quite distinct from the one here presented. See, State v. Allen, 89 Iowa 49, 56 N. W. 261; State v. Ayer, 23 N. H. 301.

Accordingly, we must hold there is nothing here to justify a conclusion that the trial court abused its discretion in denying the motion for a new trial on this issue.

■ We do not feel that the court abused its discretion in denying the motion for a new trial because of remarks of counsel for the Burnses in his closing argument to the jury. Willmar Gas Co. Inc. v. Duininck, 239 Minn. 173, 58 N. W. (2d) 197; Beebe v. Kleidon, 242 Minn. 521, 65 N. W. (2d) 614. Such remarks related primarily to the fact that at the commencement of the trial the witness, Frank Morgel, had made his identity known to the party whom he believed was right in the accident. In the closing argument it is of course proper for counsel to comment upon any evidence received at the trial and argue upon all inferences which may properly be drawn there-

from. Here, the facts with reference to Frank Morgel's procedure in reporting to Burns were injected during his cross-examination by counsel for the Kvernstoens, and since thereby they became a part of the record, reference thereto, in the closing argument of opposing counsel, was permissible. Scott v. Prudential Ins. Co. 203 Minn. 547, 282 N. W. 467; Taylor v. F. W. Woolworth Co. 151 Kan. 233, 98 P. (2d) 114; Tilbury v. Welberg, 238 Minn. 91, 55 N. W. (2d) 685; Rouchene v. Gamble Const. Co. 338 Mo. 123, 89 S. W. (2d) 58.

It is also of significance that after objection to this line of argument was interposed no further reference was made thereto. See, Olson v. Gjertsen, 42 Minn. 407, 44 N. W. 306. Under all such circumstances, we find there was no abuse of discretion in the court's refusal to order a new trial because of such remarks.

The order appealed from is affirmed.

Affirmed.

---

[1]Reported in 74 N. W. (2d) 300.