**Warren O. ROBINSON, et al.,
Respondents,**

v.

**MACK TRUCKS, INC., et al.,
Appellants.**

No. C9-87-2174.

Court of Appeals of Minnesota.

June 28, 1988.

Review Denied Sept. 28, 1988.

Michael A. Stern, Daniel J. Maertens, Fredrikson & Byron, P.A., Barry L. Blomquist, Jr., Blomquist & Espeset, Minneapolis, for respondents.

Thomas L. Kimer, Jeff H. Eckland, Faegre & Benson, Minneapolis, for appellants.

Heard, considered and decided by WOZNIAK, C.J., and HUSPENI and NIERENGARTEN, JJ.

HUSPENI, Judge.

Appellants, Mack Trucks, Inc. and Mack Financial Corporation, sold a truck to respondents, Warren and Patricia Robinson, on an installment sale contract; appellants retained a security interest. The truck was repossessed when respondents became delinquent on the contract payments. Respondents brought an action for wrongful repossession and sought a temporary injunction preventing sale of the truck by appellants. In addition, respondents sought return of the truck. The trial court granted a temporary injunction and ordered the return of the truck. Four years later, respondents pursued their claim for damages for wrongful repossession and were awarded compensatory and punitive damages. Respondents then moved for attorney fees incurred in obtaining return of the truck and for pre-verdict interest on the damages award. In addition, respondents moved for a new trial on the issue of punitive damages. Appellants moved for a judgment notwithstanding the verdict (JNOV), or alternatively, for an unconditional remittitur. The trial court granted respondents' motion for pre-verdict interest but denied all other motions. Mack Trucks and Mack Financial appeal from the denial of their post-trial motions. The Robinsons

petitioned for review of the denial of their motion for attorney fees. We affirm.

## FACTS

On March 6, 1981, respondents purchased a truck from appellants for $63,075. Appellants retained a security interest in the truck. The retail installment contract contained an acceleration clause.

Respondents paid the first five loan payments in a timely manner. Beginning in August of 1981, respondents fell behind in their payments. Each of the August through December 1981 payments was paid late and each was accepted by appellants together with late charges. Subsequently, respondents were delinquent in the payment of the January and February 1982 installments.

On March 17, 1982, appellants notified respondents that their account was in default and that the two installments must be paid by March 22, 1982, stating: "Please take notice, to avoid replevin action you must comply with the contract terms you have previously ignored." The March 17 letter did not notify respondents that failure to make the two delinquent payments would result in repossession. Respondents testified that they did not understand the term "replevin action." The record reveals that the form letter did not conform with legal advice given to appellants by their attorney. Testimony from appellants' employees indicated that other default notices used by appellants used the term repossession rather than replevin, and provided no reason why the March 17, 1982, notice was different.

The default notice was not delivered to respondents' home, but to Mr. Robinson's parents' home and was not received by respondents until March 23. Mr. Hess, appellants' employee, admitted he subsequently changed the terms of the March 17 letter by agreeing with Mrs. Robinson on March 23, 1982, to accept one payment on March 24, 1982.

On March 10, 1982, respondents had turbo work done on the subject truck at appellants' repair facility. On March 19, 1982, the turbo failed while Mr. Robinson was on the road. He contacted appellants by phone to organize repair at appellants' expense. On March 23, 1982, within 12 days of the first work on the turbo, the truck was returned to appellants' facility. The next day, Mr. Robinson was notified the truck was ready to be picked up. He paid $367 of the repair bill and appellants "absorbed" the remaining $929.59 of the bill. When Mr. Robinson went to drive his truck away, he was told the truck was repossessed. Respondents allege that they were "enticed" into the repair facility on March 23 because on March 10 appellants' mechanic had removed the turbo and rendered it faulty.

Appellants maintained repossession was based upon respondents' failure to pay the outstanding contract payments, their poor payment record, and because the truck body work was damaged. After contacting appellants' head office to attempt to negotiate, respondents were told that delinquent payments would not be accepted and that the truck could only be recovered upon payment of the balance on the contract.

On April 23, 1982, after negotiations failed, respondents brought an action alleging wrongful repossession of the truck, and sought general and compensatory damages in excess of $10,000, punitive damages in excess of $50,000, and a temporary injunction preventing sale of the truck pending the outcome of the action. In the motion papers for temporary injunction, respondents requested return of the truck. Appellants contended that their repossession was proper pursuant to Minn.Stat. § 336.9–503 and that they had acted in good faith. They denied wrongful repossession and sought the immediate right to sell the truck and a judgment in the amount of $41,213.01.

The trial court ordered that the truck be returned to respondents upon payment of the January through March, 1982 installments. In addition, appellants were restrained from selling the truck "unless there is a breach of the retail installment contract at the time of the June 17, 1982 payment date or thereafter." Respon-

dents' damages claims were not dismissed. Appellants did not appeal from this order.

On May 14, 1982, fifty-one days after repossession, appellants returned the truck to respondents. Respondents continued to make contract payments until July 1984 when they once again became delinquent. The truck was returned to appellants during July of 1984 at which time there was $20,000 outstanding on the contract.

In April, 1986, respondents pursued their claim for damages resulting from the March 1982 repossession of the truck. After arbitration on the issue of damages failed, the parties requested trial de novo. Trial was set for February, 1987.

On June 8, 1987, appellants filed a motion in limine seeking in part that:

> [A]ny and all evidence relating to [respondents'] claim for punitive damages will be inadmissible at trial on the basis that no clear and convincing evidence exists that [appellants'] conduct showed a willful indifference to the rights or safety of others and such evidence would be prejudicial to [appellants].

Appellants argued:

> Minnesota Statute 336.9–507 regulates a secured party's liability in cases of wrongful repossession. That statute is in accord with the decision in *Cushing v. Seymour,* [30 Minn. 301], 15 N.W. 249 (Minn.1883). (*See* Minn.Code Comment, Subsection 9–507(1).) The decision in *Cushing* and its underlying rationale apply to the facts in this case. [Respondents] claim lost contract profits which are not subject to calculation with reasonable certainty. An estimate of damages based on [respondents'] allegedly expired contract would be simple conjecture and, thus, it is an inappropriate basis for a damage award. * * *

> \* \* \* \* \* \*

> In order for punitive damages to be submitted to the jury, [respondents] must produce clear and convincing evidence that the acts of [appellants] showed a willful indifference to the rights or safety of [respondents]. (Minn.Stat. § 549.20). [Respondents'] punitive damages claim rests solely on their unfound-

ed contention that [appellants] ignored the holding in *Cobb v. Midwest Recovery Bureau,* 295 N.W.2d 232 (Minn.1980) and failed to change their procedures. * * *

> \* \* \* \* \* \*

> [Respondents] have alleged no applicable legal basis under Minn.Stat. § 549.20 for awarding punitive damages in this action.

Appellants' motion in limine was denied.

The claims were tried to a jury on June 15, 1987. Appellants declined to propose punitive damages instructions and objected to all the jury instructions; the arguments were essentially the same as those presented in the motion in limine.

By special verdict, the jury determined that appellants' repossession of the truck was wrongful and awarded respondents $22,200.00 general and compensatory damages. In addition, the jury determined that appellant, Mack Financial, showed a willful indifference to respondents' rights and awarded $118,110.00 in punitive damages to respondent. There was no award of punitive damages against appellant, Mack Trucks.

On July 29, 1987, appellants moved for JNOV arguing that this was a replevin action, and:

> (1) that the statutes authorizing compensatory damages in replevin actions permit recovery only for the reasonable rental value of property; (2) that the statutes prescribing damages in replevin actions do not permit recovery of punitive damages; (3) that as a matter of law no clear and convincing evidence of willful indifference to the legal rights of [respondents] exists; and (4) that punitive damages should not be awarded where injury is limited to property damage.

The trial court denied appellants' motion for JNOV without addressing the issue of whether the replevin statutes authorize recovery only for reasonable rental value of the property and preclude recovery of punitive damages.

Alternatively, appellants moved for an unconditional remittitur of compensatory damages to $10,000 and of punitive damages to $50,000 on the basis that:

(1) [respondents] can only recover the compensatory damages for which they pled since those damages were less than the jurisdictional amount required for [appellants] to invoke their right of removal to federal court; (2) [respondents] were improperly permitted to amend, on the day of trial, their punitive damages claim * * * to $3.75 million without complying with Minn.Stat. §§ 549.191 and 549.20; (3) the jury's excessive and unjustified award of punitive damages appears to have been given under the influence of passion or prejudice caused by both the request of [respondents'] counsel for the astronomical sum of $3.75 million as well as his improper characterizations of [appellants]; and (4) the excessive and unsupported award of punitive damages solely against [appellants] appears to have been given as a consequence of prejudicial misconduct by [respondents'] counsel during closing argument.

On the issue of removal to federal court, the trial court stated:

[I]t is clear that [appellants] in fact had the opportunity to [remove the case to federal court]. In their initial complaint, [respondents] pleaded compensatory damages in excess of $10,000 and punitive damages of $50,000. The law permits consideration of punitive damages in determining whether the jurisdictional "amount in controversy" has been established for a federal diversity action.

Regarding the allegation that respondents had improperly been allowed to amend their complaint to increase punitive damages, the trial court said:

It is well settled in Minnesota that Rule 15 motions to amend pleadings are to be liberally granted. * * * Parties opposing such amendments have the burden of establishing prejudice from the amendment. Here, [appellants] were aware as early as December of 1986, long before the trial of this matter, that [respondents] intended to seek punitive damages in excess of $50,000. [Appellants] can certainly not argue convincingly that they were caught off guard by the granting of the motion to amend.

On the issue of punitive damages, the trial court stated:

The use by [respondents'] counsel in final argument of phrases like "foreign corporation", "from Pennsylvania" or "lived to make money" does not establish the fact that the jury's passion and prejudice were inflamed.

The motion for an unconditional remittitur was denied.

On July 27, 1987, the trial court also heard respondents' motions for pre-verdict interest and for a new trial on the issue of attorney fees. The trial court granted respondents' motion for pre-verdict interest on the compensatory damages.

The trial court denied respondents' motion for attorney fees, stating:

Absent any explicit statutory or contractual authorization, [respondents] cannot recover attorney's fees. * * * Additionally, any issue of the availability of attorney's fees as special damages for the recovery of the truck more properly should have been raised at the temporary restraining order hearing * * *.

Appellants argue on appeal that this was a replevin action and that the trial court erred in denying their post-trial motions. Respondents petitioned for review on the issue of attorney fees.

### ISSUES

1. Did the trial court err in denying appellants' motion for a judgment notwithstanding the verdict?

2. Did the trial court err in denying appellants' motion for an unconditional remittitur?

3. Did the trial court err in denying respondents' motion for attorney fees incurred in obtaining possession of the truck?

### ANALYSIS

#### I.

■ A motion for judgment notwithstanding the verdict should be granted only

in those unequivocal cases where, in the light of the evidence as a whole, it would be clearly the duty of the trial court to set aside a contrary verdict as being manifestly against the entire evidence. *Coenen v. Buckman Building Corp.*, 278 Minn. 193, 198, 153 N.W.2d 329, 334 (1967). Thus, the only question on appeal is whether there is sufficient, competent evidence reasonably tending to support and sustain the jury's findings. *Id.*

■ Appellants argue, as they did in the motion for JNOV, that this is a statutory replevin action and that the statute does not permit recovery of either compensatory damages for emotional distress and lost income or punitive damages. In addition, appellants rely strongly upon this court's decision in *Widgren v. Massie*, 352 N.W.2d 420 (Minn.Ct.App.1984) to support the arguments that this is a replevin action because respondents requested the return of the truck in their complaint, and that respondents can only recover as damages in a replevin action the cost of renting a truck. Respondents counter that this theory was not argued to the trial court and that appellants litigated on the wrongful repossession theory by consent.[1]

■ The record indicates that appellants did not argue at trial this was solely a replevin action. Certainly, appellants argued that respondents could only recover the costs of hiring a truck for the fifty-one day period during which appellants had possession. Appellants did not object to the jury instructions on the basis that compensatory damages for lost income and punitive damages could not be awarded in replevin actions. Additionally, appellants made no motion for a new trial. Therefore, the issue of error in the jury instructions was not preserved for appeal. Under such circumstances, the trial court's charge, even if erroneous, becomes the law of the case, and whether the verdict is sustained by the evidence is then determined by ap-

plication of the rules of law laid down in the charge. *Coenen*, 278 Minn. at 198, 153 N.W.2d at 334. Where the defeated party rests its motion for JNOV without asking for a new trial, errors at the trial, whether in the rulings or in the instructions to the jury, cannot be reviewed or considered. *Id.*

In addition, our review of the record convinces us that this matter was, in fact, tried as a wrongful repossession action. The original complaint alleged wrongful repossession in addition to the request for return of the truck. Appellants' defense rested upon their contention that repossession occurred in good faith, authorized by article 9.

Clearly, at trial appellants attempted to bring themselves within specific holding of *Cobb v. Midwest Recovery Bureau*, 295 N.W.2d 232 (Minn.1980).[2] In *Cobb* a vehicle was repossessed under article 9 after the secured party had accepted late payments. The purchaser obtained the return of his truck through negotiation rather than by court order and subsequently pursued his claims for wrongful repossession. He was awarded compensatory damages for lost profits arising from the repossession together with punitive damages. The supreme court reversed the punitive damages award, determining that the secured party had acted with a good faith belief that it was complying with the existing law.

At trial here, appellants argued that they had, indeed, complied with the requirements of notice prior to repossession which the *Cobb* court set forth in cases where late payments had been accepted. Appellants also argued that they, too, were entitled to relief from punitive damages because they acted in good faith. We find appellants' reliance on *Cobb* in its defense in the trial court inconsistent with its insistence on appeal that this case is a replevin action, not a wrongful repossession one.

---

1. An issue is litigated by consent when the adverse party fails to object to the introduction of evidence outside of the issues raised in the pleadings or when the adverse party introduces evidence relating to such issues. *Hohenstein v.*

*Goergen*, 287 Minn. 512, 514, 176 N.W.2d 749, 751 (1970). This was not such a case.

2. Mack Financial, appellant here, was a defendant/appellant in *Cobb* also.

Further, we believe appellants' reliance on *Widgren* is misplaced. In *Widgren* this court determined that the substance of plaintiff's complaint requested return of the truck. Such a request was deemed sufficient to cast the case as a replevin action. 352 N.W.2d at 425. Therefore, the *Widgren* court ruled that the purchaser could recover only the reasonable rental value of a similar truck for the period of detention and could not recover lost wages. There is no indication that the purchaser in *Widgren* brought an action for damages for wrongful repossession in addition to her replevin action. Furthermore, the *Widgren* court cited neither *Cobb* nor article 9.

Appellants' second argument in support of the motion for JNOV is that there was no clear and convincing evidence that they acted with willful indifference to respondents' legal rights. Appellants contend they acted in good faith and place considerable emphasis on the admission by respondents that they were not tricked by Mr. Hess, a Mack Financial employee. Respondents counter that Mack Financial not Mr. Hess tricked them.

■ Punitive damages are not recoverable where there is a good faith dispute over the law of wrongful repossession and where the secured party's conduct was merely negligent rather than done with malicious, willful, or reckless disregard of the rights of others. *Cobb*, 295 N.W.2d at 237. The purpose of punitive damages is not to compensate a party but is to both punish and deter according to the gravity of the act. *Melina v. Chaplin*, 327 N.W.2d 19, 20 n. 1 (Minn.1982).

■ A motion for JNOV admits every inference reasonably to be drawn from the evidence as well as the credibility of the testimony for the adverse party. Unless this court is able to determine that the evidence is practically conclusive against the verdict, or that reasonable minds could reach but one conclusion against the verdict, the trial court's order denying the motion for JNOV should stand. *Seidl v. Trollhaugen, Inc.*, 305 Minn. 506, 507, 232 N.W.2d 236, 239 (1975).

■ The record indicates that appellants, (defendants in *Cobb* also) were fully cognizant of the requirement that where the secured party has accepted late payments, notice must be given to a purchaser prior to repossession of the collateral. However, there is evidence that Mack Financial did not have adequate control over its employees regarding repossession of the truck. The jury determined that one appellant, Mack Financial, acted in willful disregard of respondents' rights. The jury found respondents' testimony credible in spite of appellants' protestations of good faith repossession. The verdict was supported by the evidence. Denial of the motion for JNOV was proper.

## II.

Appellants argue that the trial court erred in denying unconditional remittitur of punitive damages to $50,000 on the basis that respondents appealed to the passion and prejudice of the jury.

■ Whether punitive damages are appropriate is within the discretion of the jury. *Wilson v. City of Eagan*, 297 N.W. 2d 146, 150 (Minn.1980). The weight and force to be given evidence relating to punitive damages is exclusively a jury question. *Id.* The trial court's denial of a remittitur may be reversed only where there has been a clear showing of an abuse of discretion. *Sorenson v. Kruse*, 293 N.W.2d 56, 62 (Minn.1980). The *Sorenson* court stated that "where the trial court grants remittitur, or refuses to grant it, noting its reasons, this court is unlikely to tamper with that determination on appeal." *Id.* at 63.

The trial court, having heard the testimony and observed the parties and witnesses, is in a better position than this court to determine whether the damages were given under the influence of passion and prejudice, and in the absence of a clear abuse of that discretion its action will not be reversed. *LaValle v. Aqualand Pool Co.*, 257 N.W.2d 324, 328 (Minn.1977).

■ Appellants argue that various statements by respondents' attorney in closing argument were prejudicial. In

*Burns v. Kvernstoen,* 246 Minn. 75, 74 N.W.2d 398 (1955), the supreme court stated:

> In the closing argument it is of course proper for counsel to comment upon any evidence received at the trial and argue upon all inferences which may properly be drawn therefrom.

*Id.* at 82–3, 74 N.W.2d at 403. The trial court determined that respondents' statements alone did not establish that the jury's passion and prejudice were inflamed. Whether remarks made in final argument require a cautionary instruction for misconduct of counsel rests largely in the trial court's discretion, and the appellate court should not reverse its determination unless the conduct is so prejudicial that it would be a miscarriage of justice to permit the result to stand. *See, e.g., Stroncek v. Berkshire Life Insurance Co.,* 292 Minn. 57, 65, 193 N.W.2d 286, 291 (1971). Appellants have not demonstrated any specific examples of prejudice. Having examined the transcript, we conclude there is nothing in respondents' closing argument to indicate the trial court erred.

### III.

■ Respondents in their notice of appeal argue that they should recover attorney fees expended in 1982 in obtaining return of the truck. It is well established that attorney fees are not recoverable absent statutory authority. Respondents rely upon *Gits v. Norwest Bank Minneapolis,* 390 N.W.2d 835 (Minn.Ct.App.1986) to support the argument for an award of attorney fees. We conclude that respondents' reliance upon *Gits* is misplaced. *Gits* was a conversion action under article 5, whereas this case is a claim for wrongful repossession under article 9.

Although Minn.Stat. § 336.9–504 permits the secured party to recover attorney fees and legal expenses incurred in lawful repossession of the collateral, we can find nothing in article 9 permitting the victim of wrongful possession to recover attorney fees incurred in obtaining the return of the collateral.

## DECISION

The trial court did not err in denying appellants' motions in the alternative for judgment notwithstanding the verdict or an unconditional remittitur. The denial of an award of attorney fees incurred in obtaining return of the truck after wrongful repossession was proper.

Affirmed.