Elmer F. GITS, Respondent,

v.

**NORWEST BANK
MINNEAPOLIS, Appellant.**

No. C9–85–2185.

Court of Appeals of Minnesota.

July 22, 1986.

Gregory Spalj, Jerome S. Rice Law Offices, Minneapolis, for respondent.

Alan M. Anderson and Thomas L. Kimer, Faegre & Benson, Minneapolis, for appellant.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and HUSPENI, JJ.

## OPINION

LANSING, Judge.

Norwest Bank appeals from a judgment that it converted $50,000 in bonds owned by Elmer Gits. Norwest argues that the compensatory damages awarded by the jury were not caused by the conversion and that the punitive damages awarded were improper and excessive. We affirm.

## FACTS

Elmer Gits and his brother, Wilfred Gits, maintained two joint checking accounts with Norwest, one primarily used by Gits and one primarily used by his brother. They also maintained several joint bond trading accounts called "safe-keeping" accounts. Bond receipts were held in the safe-keeping accounts until the bonds matured, and then the proceeds were transferred to one of the joint checking accounts, depending on which brother purchased the bond.

On June 7, 1978, Gits and his brother each purchased a $25,000 U.S. Treasury bond from Norwest. The receipts were assigned to the safe-keeping accounts. On June 12, 1978, the bank received instructions to cancel the bond purchased for Wilfred Gits, but failed to withdraw the cancelled bond receipt from the account.

On June 29, 1978, both bonds matured. The bank transferred the proceeds of Elmer Gits' bond to his checking account and the proceeds of the other bond into his brother's checking account. Wilfred Gits apparently believed that the bank mistakenly paid him his brother's proceeds and instructed the bank to transfer the money to Elmer Gits' checking account. Gits thus received the proceeds from two $25,000 bonds instead of one.

Gits testified that he contacted the bank about the "extra" $25,000 and was told, on several occasions, that the money was indeed his. The bank records indicate that Gits reinvested the $25,000 into another bond on August 4, 1978.

Norwest did not contact Gits about the error until December 1978. He requested documentation of the error, which was sent to him in early February 1979. Gits disputed that the money was Norwest's and refused to repay the $25,000.

In December 1979 Gits asked Norwest to transfer all of the bonds in his safe-keeping accounts to another bank. Norwest, through its counsel, told Gits it would transfer the bonds except two $25,000 Federal Home Loan Bank bonds, which would be held until he paid the disputed $25,000 plus interest to the bank.

Despite repeated requests, Norwest refused to transfer the two bonds. In February 1983 the bonds matured, and Norwest retained $31,000, the amount of the dis-

puted bond plus 6 percent interest from February 1979. Norwest sent the rest of the proceeds to Gits and apparently abandoned a lawsuit it had commenced against him to recover the funds. Gits then sued Norwest for conversion of the Federal Home Loan Bank bonds.

The jury found that the disputed $25,000 belonged to Norwest, but that Norwest had converted Gits' bonds. The jury also found that Gits had sustained $736 in damages as a result of Norwest's refusal to transfer the bonds; both parties agree that the jury obtained that figure from the amount of attorney's fees Gits expended in defending against Norwest's suit. The jury awarded $50,000 in punitive damages. Norwest appeals from the judgment and an order denying its motion for JNOV or a new trial.

## ISSUES

1. Does the evidence support the jury's determination that the attorney's fees Gits incurred in the first lawsuit were caused by Norwest's retention of his bonds?

2. Was the award of punitive damages improper or excessive?

## ANALYSIS

Norwest does not challenge the jury's determination that it converted Elmer Gits' bonds. The bank's only argument on appeal is that the conversion did not cause the expenditure of attorney's fees, and therefore, in the absence of compensatory damages, the punitive damages awarded by the jury are prohibited.[1]

## I

■ Causation exists if a defendant's tortious conduct was a substantial factor in bringing about the injury. *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980); *Prosser and Keeton on the Law of Torts*, § 41 at 267–68 (5th ed. 1984). A jury's determination of causation will not be upset "unless the court finds it to be manifestly contrary to the weight of the evidence." *Lamke v. Louden*, 269 N.W.2d 53, 56 (Minn.1978).

■ Norwest contends that it sued Gits in August 1979, before Gits requested the transfer of his bonds. Gits claims he was sued in February 1980, after the bonds were withheld. We cannot conclusively determine when the action was commenced, because there is no affidavit of service in the record. However, the element of causation is satisfied under either account of the facts. There is no question that the bonds were retained during the course of the litigation. The jury could therefore have found the legal fees Gits incurred in defending the suit were substantially connected to either the bank's wrongful retention of the bonds or its legal strategy in abandoning the lawsuit after the bonds matured. We cannot say the jury's verdict is manifestly contrary to the weight of the evidence.[2]

■ We also reject Norwest's claim that the "benefits rule" of damages requires the $736 in compensatory damages to be offset by $3,000 in interest Gits earned through the use of the misapplied $25,000. The benefits rule provides that if a defendant's tortious conduct confers a benefit, as well as a harm, upon the plaintiff, the jury may weigh the value of the benefit against

1. Gits did not argue at trial that the measure of actual damages was $31,000, the amount the bank ultimately retained from proceeds of Gits' two bonds. Neither party has raised or briefed the interesting question of whether punitive damages could be based on the $31,000 Norwest kept when the jury found a corresponding debt in the same amount owed by Gits to Norwest. *See* Restatement (Second) of Torts § 923 (1977) ("A tortfeasor cannot diminish the amount of recovery by paying a debt of the injured person without the latter's consent * * * ").

2. Nominal damages may be recovered for the wrongful retention and conversion of personal property, even though no actual damages are sustained as a result of the conversion. *Oleson v. Newell*, 12 Minn. 114 (1867). While the Minnesota Supreme Court has not yet ruled that an award of nominal damages can sustain an award of punitive damages, *see Jacobs v. Farmland Mutual Insurance Co.*, 377 N.W.2d 441, 444–45 (Minn.1985), that is the rule in almost every jurisdiction. *See* Ghiardi & Kircher, *Punitive Damages, Law and Practice* § 5.37 at 108–09 (1981).

the claimed harm. Restatement (Second) of Torts § 920 (1977); *Clapham v. Yanga,* 102 Mich.App. 47, 300 N.W.2d 727 (1980).

■ Norwest does not argue that its retention of the bonds conferred a benefit on Gits. Instead, Norwest claims that it conferred a benefit by not seeking to recover all the interest Gits earned on the misapplied $25,000. This "benefit" is not a result of the conversion of the bonds, but of the bank's decision not to seek recovery of the full amount of interest Gits earned, and therefore the benefits rule does not require the compensatory damages to be reduced by the amount of the earned interest. *See* Restatement (Second) of Torts § 920 comment d (1977).

■ We also note that the record does not indicate that Norwest requested an instruction on the benefits rule, nor did Norwest object to the court's instruction.[3] Norwest cannot claim that the jury improperly applied the benefits rule when it was not instructed on that rule.

## II

■ Good faith is a proper defense to punitive damages, even where a defendant is mistaken in its belief that its actions were legally correct. *Peterson v. Sorlien,* 299 N.W.2d 123, 129–30 (Minn.1980); *Roworth v. Minnesota Mutual Life Insurance Co.,* 674 F.2d 756, 758 (8th Cir.1982). Norwest claims the evidence demonstrated that it relied upon the advice of counsel in refusing to transfer Gits' bonds. The trial court stated that the evidence on the issue of good-faith reliance was "so general and conclusory as to prevent any finding as a matter of law, and in fact, the jury apparently did not believe it."

■ Our review of the record supports this conclusion. The Norwest officers involved could not recall when or where they spoke to counsel or precisely what their attorneys said. Given this weak testimony

concerning good-faith reliance, the evidence that Norwest, in the absence of either an oral or written agreement with Gits, intentionally refused to transfer from a "safe-keeping" account $50,000 in bonds which it knew were owned by Gits, was sufficient to allow the trial court to instruct the jury on punitive damages.

■ An award of punitive damages will not be disturbed on appeal unless it is so excessive as to be unreasonable. *Stuempges v. Parke, Davis & Co.,* 297 N.W.2d 252, 259 (Minn.1980). In determining whether an award of punitive damages is unreasonable, we must look to the factors found in Minn.Stat. § 549.20, subd. 3 (1984). *See Wilson v. City of Eagan,* 297 N.W.2d 146, 151 (Minn.1980). In view of the jury's broad discretion, we cannot say this award was unreasonable. The amount awarded was equal to the value of the bonds Norwest refused to transfer, and the conversion was effected by high-level management employees. Norwest does not dispute on appeal that its actions were unlawful; the only defense Norwest offered at trial was the vague testimony of reliance on counsel. The jury could thus have considered Norwest's willful refusal to transfer a customer's bonds out of accounts which are marketed as "safe-keeping" accounts to be a serious breach of duty to customers and a coercive collection procedure warranting deterrence. We decline to reverse the jury's award.

## DECISION

Affirmed.

---

3. The trial court's instruction that the jury "may consider, in determining the amount of damages, any value the plaintiff received from *the bonds*" did not constitute an instruction on the benefits rule. It is clear this instruction only applied to the value Gits received from the converted bonds, *not* the value he received from the use of the misapplied $25,000.