*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1233**

Roxanne J. Soderholm,
Respondent,

vs.

Olivia Forar, et al.,
Appellants.

**Filed April 25, 2016
Affirmed
Reyes, Judge**

Scott County District Court
File No. 70CV154900

Roxanne Soderholm, Apple Valley, Minnesota (pro se respondent)

Robert J. Bruno, Robert J. Bruno, Ltd., Burnsville, Minnesota (for appellants)

Considered and decided by Ross, Presiding Judge; Reyes, Judge; and Randall, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**REYES**, Judge

Appellants argue that the district court erred in denying their motion for judgment as a matter of law (JMOL) that respondent failed to prove the value of a motorcycle on

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

the date of conversion and that she was the owner of the motorcycle because appellants gifted it to her. We affirm.

## FACTS

On September 12, 2014, respondent Roxanne J. Soderholm filed a claim in conciliation court against her daughter, appellant Olivia Forar, and son-in-law, appellant Jason Forar, for selling her motorcycle, requesting $8,923 in damages.[1] Roxanne appeared pro se, and the conciliation court ruled in her favor.

Olivia and Jason removed the case to district court for trial and sought review of the conciliation court's decision.[2] On May 27, 2015, Olivia and Jason appeared before the district court and were represented by counsel. Roxanne once again appeared pro se.

Roxanne testified to the following at trial. On April 22, 2010, she and Olivia bought a used Harley Davidson Fat Boy motorcycle. The total cost of the motorcycle was $13,214.98.[3] Roxanne paid the down payment of $3,174.58. Because Roxanne was unable to qualify for financing on her own, Olivia signed the purchase agreement and promissory note for the motorcycle as a gift, and Roxanne agreed to make monthly payments. Roxanne admitted to making some late payments. She stated that she rode the

---

[1] We note that the unpaid balance of cost of goods on the promissory note for the motorcycle was $8,930.45 rather than the $8,995 to which Roxanne testified, and that she requested $8,923 in damages in conciliation court.

[2] Under Minn. R. Gen. Pract. 521(a), the aggrieved party may appeal to the district court for a trial de novo. "[T]he pertinent portions of the conciliation court file of the cause shall be filed in district court." Minn. Gen. R. Pract. 521(d).

[3] The value or cash price of the motorcycle on the date of sale was $11,990.

motorcycle, had the motorcycle license to drive it, purchased insurance, and invested $15,000 in the motorcycle.

Around April 2014, Roxanne met with Olivia and Jason to discuss an arrangement to help her with her finances. The parties agreed that Olivia and Jason would take out a loan with Wells Fargo to pay off Roxanne's current debt. The parties also agreed that Roxanne would sell the motorcycle to pay off the balance of the motorcycle loan and a portion of the Wells Fargo loan. Roxanne would then continue to pay off the balance of the Wells Fargo loan over time. Although she did not want to sell the motorcycle, she was willing to do so because Olivia and Jason were taking out a loan to help her, and their agreement required her to sell the motorcycle. Roxanne gave the motorcycle to Olivia and Jason and stopped making the monthly payments because she was ahead on the payments. She also thought Olivia and Jason would make any necessary payments because the motorcycle was in their possession, and she assumed the motorcycle would sell quickly because it was priced "really low.[4]"

Once Roxanne gave the motorcycle to Olivia and Jason, they stopped communicating with her. While Olivia and Jason made an effort to sell the motorcycle, the advertisement they posted was ineffective because the photos were upside down and backwards. When Olivia and Jason eventually did communicate with Roxanne about the motorcycle, they informed her that they received an offer for a minimal price; Roxanne

---

[4] The record is silent as to what priced "really low" means. It appears, however, that Roxanne is referring to the $9,900 amount for which she advertised the motorcycle on Craigslist.

told Olivia and Jason not to sell it for "minimal money."[5]  The next time Roxanne spoke to Olivia and Jason about the motorcycle, Roxanne said she wanted to come pick it up, but Olivia told Roxanne that she and Jason sold it, and the proceeds only covered the remaining balance on the motorcycle loan, approximately $5,000.  Roxanne informed Olivia and Jason that they needed to void the contract and get the motorcycle back.

Roxanne requested that the district court order Olivia and Jason to reimburse her for the original purchase price for the motorcycle of $8,995.  Roxanne acknowledged that she intended to give the motorcycle to Olivia once she paid it off and was done riding it, but the parties agreed that Roxanne would be the one riding the motorcycle until then.

Conversely, Olivia testified to the following at trial.  She had a meeting with Roxanne who wanted to sell the motorcycle for financial reasons.  Roxanne was behind on her bills, and "we agreed that we'd help her."  Olivia admitted that Jason called Wells Fargo about cosigning on a loan for Roxanne, but the bank said that the loan would be in Olivia's and Jason's names, and they did not want to put another loan in their names on Roxanne's behalf.  Olivia stated that she attempted to sell the motorcycle on the website "OnceDriven," but there was only one interested buyer who ultimately changed his or her mind.  Olivia acknowledged that Roxanne listed the motorcycle on Craigslist for approximately $9,900, which was also unsuccessful.

Olivia also stated that she was, in fact, the owner of the motorcycle; that she made the last two payments, including the final payoff for the motorcycle to Harley Davidson

---

[5] The record is silent as to what "minimal money" means.

4

financial services; and that she sold the motorcycle for the remainder that was owed on the loan, which was approximately $5,000.

Olivia and Jason moved for JMOL because (1) Roxanne failed to prove the fair market value of the motorcycle and (2) she failed to prove she owned the motorcycle. The district court denied Olivia's and Jason's motion and subsequently awarded Roxanne $8,923. Olivia and Jason filed a motion for amended findings of fact, conclusions of law, and order for judgment pursuant to Minn. R. Civ. P. 52.02. The district court denied Olivia's and Jason's motion. This appeal follows.[6]

**D E C I S I O N**

Olivia and Jason argue that the district court erred in denying their motion for JMOL because it failed to make a finding on damages and because it found that Olivia and Jason gifted the motorcycle to Roxanne. We disagree.

A party may move for JMOL pursuant to Minn. R. Civ. P. 50. JMOL is appropriately granted only in unambiguous cases where: "(1) in the light of the evidence as a whole, it would clearly be the duty of the [district] court to set aside a contrary verdict as being manifestly against the entire evidence, or where (2) it would be contrary to the law applicable to the case." *Jerry's Enters., Inc., v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 711 N.W.2d 811, 816 (Minn. 2006) (quoting *J.N. Sullivan & Assocs., Inc. v. F.D. Chapman Constr. Co.*, 304 Minn. 334, 336, 231 N.W.2d 87, 89 (1975)). "We apply de novo review to the district court's denial of a [r]ule 50 motion." *Bahr v. Boise*

---

[6] Because Roxanne failed to file a brief, this case will be determined on the merits pursuant to Minn. R. Civ. App. P. 142.03.

5

*Cascade Corp.*, 766 N.W.2d 910, 919 (Minn. 2009); *see Glorvigen v. Cirrus Design Corp.*, 796 N.W.2d 541, 549 (Minn. App. 2011), *aff'd*, 816 N.W.2d 572 (Minn. 2012). And "we view the evidence in the light most favorable to the prevailing party." *Bahr*, 766 N.W.2d at 919.

The district court's findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the [district] court to judge the credibility of the witnesses." Minn. R. Civ. P. 52.01. "The decision of a district court should not be reversed merely because the appellate court views the evidence differently. Rather, the findings must be manifestly contrary to the weight of the evidence or not reasonably supported by the evidence as a whole." *Rogers v. Moore*, 603 N.W.2d 650, 656 (Minn. 1990) (citation and quotation omitted). "Findings of fact are clearly erroneous only if the reviewing court is left with the definite and firm conviction that a mistake has been made." *Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (quotation omitted). And "[i]f there is reasonable evidence to support the district court's findings, we will not disturb them." *Rogers*, 603 N.W.2d at 656.

## I.     The district court's findings and conclusion regarding the value of the motorcycle

The district court made the following findings of fact regarding Roxanne's damages: Roxanne paid $3,174.58 as a down payment on the motorcycle; she made monthly payments on the promissory note totaling $12,195; as of April 25, 2014, the remaining balance owed on the promissory note was $4,702.31; Roxanne suffered financially; Olivia and Jason took possession of the motorcycle and sold it for the balance remaining

6

on the promissory note; Roxanne did not receive any proceeds from the sale of the motorcycle; and Roxanne requested either the return of her motorcycle or $8,923. The district court weighed and considered the credibility of each witness, and implicitly found Roxanne credible by accepting her testimony. Minn. R. Civ. P. 52.01.

The district court's findings are supported by the record and are therefore not clearly erroneous. *Id.* Roxanne provided documentation of the $3,174.58 down payment, the total amount of payments she made for the motorcycle of approximately $15,000,[7] and the original cash price of the motorcycle of $11,990. Roxanne further testified that, as a remedy, she requested the original "sale amount" of the motorcycle, $8,995, or the return of her motorcycle. A party can testify as to the value of their goods. *Lehman v. Hansord Pontiac Co.*, 246 Minn. 1, 6-7, 74 N.W.2d 305, 309-10 (1955) (stating that an owner familiar with the value of goods may testify as to its value). Moreover, Olivia and Jason acknowledged that Roxanne listed the selling price of the motorcycle at approximately $9,900, and they did not dispute the value of the motorcycle. The district court awarded Roxanne $8,923, which was consistent with what the conciliation court awarded. As such, we conclude that the evidence supports the district court's findings and conclusion.

**II.     The district court's findings and conclusion that the motorcycle was a gift**

---

[7] Roxanne testified that she spent $15,000 on the motorcycle. The payment histories from Roxanne's bank and Harley Davidson support that the total amount she paid was approximately $15,000. This amount reflects Roxanne's down payment and the payments that she made from June 2010 to April 2014. This amount does not include the last two payments that Olivia and Jason made or the $19 excess payment, to which the record is silent.

7

Olivia and Jason next argue that the evidence does not support the district court's findings and conclusion that the motorcycle was a completed gift. Olivia and Jason do not cite to any legal authority to support their argument as to why the gift theory is erroneous, but instead argue that the gift theory is contradicted by the evidence because (1) Roxanne could not purchase the motorcycle on her own; (2) the parties agreed that Olivia would take title to the motorcycle and execute the promissory note for the financing; (3) the parties agreed that Roxanne would make payments to the lender; and (4) Roxanne "surrendered" the motorcycle to Olivia and Jason to sell. We are not persuaded.

"Conclusions of law will be overturned only upon a determination that the [district] court has erroneously construed and applied the law to the facts of the case." *Dehn v. Comm'r of Pub. Safety*, 394 N.W.2d 272, 273 (Minn. App. 1986). The district court concluded that Olivia and Jason gifted the motorcycle to Roxanne based on the testimony and evidence in the record. "The legal elements of a gift are (1) delivery, (2) intention to make a gift on the part of the donor, and (3) absolute disposition by him of the thing which he intends to give to another." *Brennan v. Carroll*, 260 Minn. 521, 528, 111 N.W.2d 229, 234 (1961) (quotation omitted).

Here, the testimony establishes that (1) the motorcycle was delivered when Roxanne and Olivia went to the dealership and purchased the motorcycle; (2) Olivia and Jason intended that Roxanne have and ride the motorcycle;[8] and (3) Olivia and Jason

---

[8] Importantly, Olivia and Jason did not dispute these facts.

8

completed the transfer by surrendering the motorcycle to Roxanne who rode and exclusively possessed the motorcycle until April 2014. The testimony and evidence satisfies the elements of a gift. As such, the district court appropriately concluded that Olivia and Jason gifted the motorcycle to Roxanne.

Last, Olivia and Jason argue that the district court erred by not finding that Roxanne filed a claim of conversion and that she failed to meet those elements. But Roxanne did not bring a claim of conversion. Nevertheless, the district court concluded that Roxanne also prevailed on a claim of conversion. The district court found that Roxanne was the owner of the motorcycle by gift and that Olivia and Jason "took possession of the motorcycle and sold it."

"Conversion is an act of willful interference with the personal property of another which is without justification or which is inconsistent with the rights of the person entitled to the use, possession or ownership of the property." *Dairy Farm Leasing Co. v. Haas Livestock Selling Agency, Inc.*, 458 N.W.2d 417, 419 (Minn. App. 1990) (quotation omitted). Damages are generally determined by the "market value of the property at the time of the conversion, plus interest from that time." *Id*; *but see Gits v. Norwest Bank Minneapolis*, 390 N.W.2d 835, 837 n.2 (Minn. App. 1986) ("Nominal damages may be recovered for the wrongful retention and conversion of personal property, even though no actual damages are sustained as a result of the conversion.").

Here, Roxanne testified that she was the owner of the motorcycle by way of gift and that she gave the motorcycle to Olivia and Jason to sell in exchange for financial assistance. Roxanne rejected offers for a minimal price when selling it. But despite the

9

parties' discussion regarding price, Olivia and Jason sold her motorcycle for approximately $5,000. Roxanne asked Olivia and Jason to give her the motorcycle back, and she asked them to void the sale, but they refused. Therefore, Olivia and Jason interfered with Roxanne's use, possession, and ownership of the motorcycle. It is undisputed that the motorcycle has value, the record reflects that Olivia never challenged its value, and Olivia acknowledged that Roxanne listed it for approximately $9,900. As such, a market value was set for the motorcycle. *Dairy Farm Leasing Co.*, 458 N.W.2d at 419. Therefore, the evidence also supports the district court's denial of JMOL under a claim of conversion.

**Affirmed.**